IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| IN RE | : | MULTI-DISTRICT LITIGATION |
| CAMP LEJEUNE, NORTH CAROLINA WATER CONTAMINATION LITIGATION | : : : : | 1:11-md-02218-JOF |

# ORDER

This matter is before the court on the Government's motion for ruling on the preemptive effect of 42 U.S.C. § 9658 on the cases in which the Government asserted the statute of repose and on whether the North Carolina statute of repose for personal injury claims applies to latent diseases [23].

In the initial stages of this multidistrict litigation, several cases came to this court with the Government's motions to dismiss already briefed and pending.[1] In general, the three

---

[1] In at least one case, *Laura Jones v. United States of America*, originating out of the Eastern District of North Carolina, the Honorable Terrence W. Boyle had already ruled on several of the Government's motions.

Plaintiffs argue that the court should view any orders issued in *Laura Jones* as "law of the case" and that those opinions are entitled – at the very least – to deferential consideration by this court. Plaintiffs' contention ignores the fact that *Laura Jones* is no longer part of this multidistrict litigation. There can be no argument made for "law of the case" when *Laura Jones* has been dismissed and that dismissal affirmed by the United States

legal defenses raised by the Government on their motions to dismiss for lack of subject-matter jurisdiction are: (1) Plaintiffs' claims are barred by the *Feres* doctrine; (2) any post-discharge failure to warn claims are barred by the discretionary function exception to the Federal Torts Claims Act; and (3) Plaintiffs' claims are barred by the North Carolina ten year statute of repose.  One additional matter arose at the court's initial conference in the case – whether Section 9658 of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") preempted North Carolina's statute of repose.  The court stated it would address the CERCLA statute of limitations/statute of repose matters first while allowing some discovery as to the *Feres* doctrine and discretionary function exception.

In an order dated September 29, 2011, the court held that § 9658 can preempt both state statutes of limitation as well as state statutes of repose.  *See* Docket Entry [13], at 23.  The court then went on to note the "consequence of this holding may vary depending on the

---

Court of Appeals for the Eleventh Circuit.  For that reason alone, *In re Ford Motor Co.*, 591 F.3d 406 (5th Cir. 2009) and *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432 (3d Cir. 2009), cited by Plaintiffs at oral argument, do not apply.  Moreover, the "law of the case" doctrine must be applied considering the context of the multidistrict litigation.  *See*, *e.g.*, *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 678 (D.C. Cir. 1981) ("But sound exercise of the discretion implicit in this [law of the case] doctrine requires attention to the special authority granted to the multidistrict transferee judge."); *In re Bank of America Wage & Hour Employment Litigation*, 2010 WL 4180530 (D. Kan. Oct. 20, 2010) (transferee court reconsiders tolling issue de novo).  In any event, as Plaintiffs have essentially adopted the reasoning of the *Laura Jones* court in their brief, the court has carefully considered those orders.

2

factual circumstances of each plaintiff's claim so the court makes no further point other than holding that § 9658 can act to preempt a state statute of repose such as N.C. Gen. Stat. § 1-52(16)." *Id.* Because the court held that CERCLA preempted the North Carolina statute of repose, the court found there was no need to address whether North Carolina's ten year statute of repose contained an exception for latent diseases.

The Government then filed the instant motion in which it indicates that it would not be able to file a motion for interlocutory appeal on the court's CERCLA order because (1) the court indicated that factual circumstances might vary from case to case in the application of CERCLA preemption and (2) the court did not discuss the alternative issue of whether the North Carolina statute of repose contained a latent disease exception, an issue which would arise again were the United States Court of Appeals for the Eleventh Circuit to find that the court's CERCLA ruling was in error. The court directed the parties to brief these matters and held oral argument on the Government's motion on April 26, 2012.

As to the first issue, the court inserted the "factual circumstances" language because § 9658 operates such that if the state limitations period would be more favorable to a plaintiff, then CERCLA would not act to preempt that rule. The court understands now from the parties that because Plaintiffs' claims are proceeding under the Federal Tort Claims Act, that Act's statute of limitations period applies. The only question involving North Carolina law is the application of the statute of repose which is not preempted by the Federal Tort

3

Claims Act because repose is a substantive issue. There are no circumstances under which North Carolina's statute of repose would be more favorable to a plaintiff than the application of § 9658's preemptive effect. Therefore, the ruling of the court's September 29, 2011, order is simply that § 9658 preempts North Carolina's ten year statute of repose. This clarification should satisfy the Government's concern about case-by-case application of the court's legal ruling.

Plaintiffs contend that the court need not reach the second issue at this stage because it is unnecessary given the court's ruling on § 9658's preemptive effect. However, there is no doubt that both § 9658 and an interpretation of North Carolina's statute of repose are significant, dispositive issues in the litigation. If the statute of repose applies, a great deal of potential claims against the Government will be extinguished. For this reason, the court finds that it would serve judicial economy to rule on both alternative arguments regarding the statute of repose; i.e. whether the North Carolina statute of repose is preempted by CERCLA and whether the North Carolina statute of repose contains an exception for latent diseases. While the court understands Plaintiffs' concerns that the court is issuing an advisory opinion, it is not unusual for a court to rule on alternative arguments and the parties have briefed both arguments and provided oral argument to the court. Ruling on both arguments would allow the Court of Appeals to consider them at the same time rather than extending the litigation by returning to the district court and back up to the Court of Appeals

a second time. Therefore, the court will now determine whether a latent disease exception exists in North Carolina General Statute § 1-52(16).

**North Carolina General Statute § 1-52(16)**

As the court discussed above, the Government contends that the ten year statute of repose located in N.C. Gen. Stat. § 1-52(16) applies to Plaintiffs' claims. Plaintiffs disagree, contending that the statute of repose contains an exception for latent diseases.

As with any issue of statutory interpretation, the court first looks to the plain language of the statute. The Eleventh Circuit instructs on this axiomatic canon of construction:

> In construing a statute we must begin, and often should end as well, with the language of the statute itself. When the language of a statute is unambiguous, we need go no further, because we must presume that Congress said what it meant and meant what it said. The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. The import of these authorities is that we need not resort to extrinsic evidence, such as legislative history, to discern a statute's meaning if the statute's language is unambiguous.

*See In re Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002) (quotations and citations omitted).

Here, the North Carolina statute reads:

> Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of action referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to

5

>have become apparent to the claimant, whichever even first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1-52(16). Nothing in the statute implies or even remotely indicates that it might contain an exception for latent diseases. The statute plainly covers causes of action of negligence resulting in personal injury or property damage. The statute of repose – found in the last sentence of the statute – gives no indication of any exceptions. It states broadly "no cause of action." In actuality, there appears to be no dispute on this point. Plaintiffs make no argument that the statutory language, itself, is ambiguous.

Plaintiffs do rely on the order in the *Laura Jones* case as their argument for why a latent disease exception exists within § 1-52(16).[2] There, the court did not engage in interpretation of the language of § 1-52(16), rather it proceeded to consider the legislative history of the statute. Because of the manner in which former § 1-15(b) was repealed and the statute of repose shifted from that statute to the newly-enacted § 1-52(16), the *Laura Jones* court determined that it was ambiguous whether the statute of repose carried with it from § 1-15(b) the latent disease exception found by the North Carolina Supreme Court in

---

[2]In their response to the Government's motion, Plaintiffs also ask the court to determine that Plaintiffs "are in compliance with" the ten year statute of repose under some theory of negligence. Plaintiffs also ask the court to rule that the Government should not be permitted to rely on the statute of repose under an equitable estoppel theory. Neither of these issues has been raised before or briefed to the court and the court will not rule on them based on two paragraphs appended to the end of a response brief.

*Wilder* or whether the statute of repose as housed in § 1-52(16) now applied to all bodily harm, including latent diseases. *See Laura Jones*, Order, dated Nov. 9, 2010, at 4-5. The *Laura Jones* court clarified in an order denying the Government's motion for reconsideration that the court used this procedure because a "literal interpretation" of the statute would lead to "absurd" results in contravention of a North Carolina canon of statutory construction against absurdities. The "absurd" result noted by the court is that a statute of repose could extinguish a claim before it had accrued. Thus, the court delved into the legislative history. *See Laura Jones*, Order, dated, Feb. 2, 2011, at 3-6.

The court finds, however, that the first step in this analysis must be interpreting the plain language of the statute. One cannot look to legislative history in order to create an ambiguity where one does not exist in the language itself. *See CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001) ("Any ambiguity in the statutory language must result from the common usage of that language, not from the parties' dueling characterizations of what Congress 'really meant.' Where the clear and unambiguous language of a statute provides a bridge to Congress' intent, we need not and will not wade into the brackish waters of legislative history.")

When interpreting a similar North Carolina statute, the Seventh Circuit also began its analysis by considering the plain language of the statute. *See Klein v. DePuy, Inc.*, 506 F.3d 553 (7th Cir. 2007). In *Klein*, a patient who had received a hip replacement in North

7

Carolina filed suit against the manufacturer of the hip prosthesis after the patient discovered that the prosthesis was defective. After determining that North Carolina law would apply to the plaintiff's claims, the court considered whether the North Carolina Supreme Court would apply an exception to its statute of repose under N. C. Gen. Stat. § 1-50(a)(6), governing products liability claims. *Id.* at 556-57. The court found that the plain language of § 1-50(a)(6) created no exception to the statute of repose. *Id.* at 557.

While that should have been the end of the matter, however, the historical development of the statutes of limitations in North Carolina required a bit more discussion for the purposes of completeness. *Id.* As *Klein* noted, while interpreting a different limitations statute under North Carolina law, the Supreme Court of North Carolina found that the statute had no application to claims arising as a result of disease. *See Wilder v. Amatex Corp.*, 336 S.E.2d 66 (N.C. 1985). *Wilder* dealt with former § 1-15(b) which provided:

> Except where otherwise provided by statute, a cause of action, other than one for wrongful death or one for malpractice arising out of the performance or failure to perform professional services, having as an essential element bodily injury to the person or a defect in or damage to property which originated under circumstances making the injury, defect or damage not readily apparent to the claimant at the time of its origin, is deemed to have accrued at the time the injury was discovered by the claimant, or ought reasonably to have been discovered by him, whichever event first occurs; provided that in such cases the period shall not exceed ten years from the last act of the defendant giving rise to the claim for relief.

8

Former N.C. Gen. Stat. § 1-15(b) (1971) (repealed 1979). As the court indicated above, § 1-52(16), at issue in this litigation, was enacted in 1979 the same year that former 1-15(b) was repealed.

In *Wilder*, a former installer of asbestos-containing insulation filed suit against various insulation manufacturers seeking damages for asbestosis. The *Wilder* court concluded that all of § 1-15(b) applied only to "latent injury claims" or "cases in which the bodily injury . . . was not readily apparent to the claimant at the time of its origin." *See* 336 S.E.2d at 70. The court reached this conclusion by endeavoring to discern the legislature's intent in crafting the language of § 1-15(b). *Id.* at 69. To do so, the court considered the purpose of the statute, "the state of the law to which the statute was addressed, and the changes in that law the statute was designed to effect." *Id.* The *Wilder* court first noted that § 1-15(b) was not intended to govern all negligence claims. *Id.* Rather, the primary purpose of § 1-15(b) was to change the accrual date for latent injuries (enactment of the "discovery" rule) and to add a statute of repose. *Id.*

In considering why "disease" was different from a "latent injury," the *Wilder* court also examined worker's compensation cases and concluded that when the legislature drafted § 1-15(b), it already had recognized through worker's compensation cases, that a disease's diagnosis was the "first injury" from which limitations periods would run. *Id.* at 72 ("The only possible point in time from which to measure the 'first injury' in the context of a

9

disease claim is when the disease is diagnosed. When the disease is diagnosed, it is no longer latent."). Because a disease has a recognizable first injury of its diagnosis, there was "no need in 1971" for the legislature to treat diseases as latent injury claims. *Id.* The *Wilder* court held, therefore, that § 1-15(b) did not apply to disease. *Id.* at 73 (noting also that prior proposals for § 1-15(b) included "disease" but "disease" was removed in later versions of the statute). "In light of the statute's purpose, the state of the law when the statute was enacted, and the deliberate omission of reference to disease as this statute made its way through the legislative process, we are satisfied that the legislature intended the statute to have no application to claims arising from disease." *Id.*

In *Klein*, the plaintiff argued that the "disease" exception that the *Wilder* court located in former § 1-15(b) would therefore also be found in § 1-50(a)(6). *See Klein*, 506 F.3d at 558. The *Klein* court stated that rejecting this proposition should be a relatively simple matter because § 1-15(b) and § 1-50(a)(6) are two different statutes governing two different matters. *Klein* noted, however, that a Fourth Circuit case interpreting North Carolina law made the matter a bit more complicated. *See Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30 (4th Cir. 1986).[3] In *Hyer*, another asbestosis case, the Fourth Circuit held that *Wilder* "makes it plain . . . that the [North Carolina] Supreme Court does not consider disease to be

---

[3]The *Laura Jones* court also relied on *Hyer* in reaching the conclusion that the statute of repose at issue here contains a latent disease exception. *See Laura Jones*, Order, dated Nov. 9, 2010, at 6-7.

10

included within a statute of repose directed at personal injury claims unless the Legislature expressly expands the language to include it." 790 F.2d at 34. Therefore, the *Hyer* court applied the "disease exception" that *Wilder* found in former § 1-15(b) to § 1-50(a)(6), the product liability statute of repose. *Id. Hyer* has been followed by other Fourth Circuit cases: *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 (4th Cir. 1996); *Doe v. Doe*, 973 F.2d 237, 239 (4th Cir. 1992); *Guy v. E.I. DuPont de Nemours & Co.*, 792 F.2d 457, 460 (4th Cir. 1986); and *Silver v. Johns Manville Corp.*, 789 F.2d 1078, 1080 (4th Cir. 1986).

The *Klein* court, however, did not follow the *Hyer* line of cases because *Klein* believed that *Hyer* misinterpreted *Wilder*'s holding by failing to recognize the manner in which *Wilder* distinguished between "latent injuries" and "disease." *See Klein*, 506 F.3d at 558. The *Klein* court wrote that *Wilder* was interpreting § 1-15(b) which itself applied only to latent "injuries." *Id.* But *Hyer* held that *Wilder* determined that diseases were not "injuries" *at all* and therefore *Hyer* incorrectly applied a "disease" exception to a statute that was not limited to latent injuries. *Id.*[4]

---

[4]The remainder of *Klein* is not directly relevant to this case. After rejecting the *Hyer* line of cases, the *Klein* court went on to analyze what it believed a North Carolina court would hold concerning § 1-50(a)(6). *Klein* noted that the purpose of § 1-50(a)(6) was to cut off open-ended liability for manufacturers of durable goods. *Id.* at 558. The section made no comment as to accrual date or latent injuries. *Id.* Further, § 1-50(a)(6) is purely a statute of repose. *Id.* The legislature apparently never contemplated adding "disease" to the statute. *Id.* For these reasons, the *Klein* court held that there is no disease exception to § 1-50(a)(6).

The court finds the Seventh Circuit's interpretation of *Wilder* and its view of *Hyer* to be persuasive. In considering the scope of *Wilder*'s holding, it is important to remember that former § 1-15(b) did not apply to all cases of negligence. *Wilder*, itself, made this very significant distinction at the outset of its discussion. *See Wilder*, 336 S.E.2d at 69 ("We note, importantly, that G.S. 1-15(b) is not intended to be a statute of limitations governing all negligence claims, such as the statute of limitations contained in the first clause of G.S. 1-52(16)."). (And § 1-52(16) is the statute that applies in this case.) By its language, § 1-15(b) applied only to latent bodily injury, defect, or damage. A court would have to determine whether a particular cause of action fell within § 1-15(b) or whether a different statute of limitations might apply, such as the "catch all" provision that existed at the time and was located in § 1-52(5).

*Wilder* had to determine whether disease cases fell under § 1-15(b) or § 1-52(5). *Wilder* looked at the latent bodily injury, defect or damage language in § 1-15(b) and held that "disease" could not fall under § 1-15(b) because a "disease" is not latent in that a "disease" is readily apparent at the time of its "origin" which is the time of diagnosis. Regardless of whether one believes this is an artificial distinction, this is what *Wilder* held and not more. *See also Klein*, 506 F.3d at 557.

Of course, § 1-52(16) – like § 1-50(a)(6) – is a different statute altogether. Section 1-52(16) is not limited to injuries which would not be "readily apparent" at their time of

12

origin. Rather, § 1-52(16) applies to all personal injury actions and therefore *Wilder* does not control. There is no need to put "disease" into § 52(16) – or not to – because § 52(16) applies to all personal injury. That is the very point of the Government's argument.

It is necessary to discuss *Wilder* in such depth only as a means of showing why *Wilder* should not alter the plain language interpretation of § 1-52(16). The court simply cannot agree with Plaintiffs' argument that former § 1-15(b) and § 1-52(16) are essentially the same statute. To make that argument, Plaintiffs' counsel has to completely skip over the middle section of former § 1-15(b) which specifically describes latent injury in a manner that § 52(16) simply does not. This is not a mere elevation of form over substance, as asserted by Plaintiffs' counsel; it is a matter of plain language interpretation.

The court understands Plaintiffs' argument that *Hyer*, the product of the Fourth Circuit, ought to be of particular importance in interpreting a North Carolina statute of repose. But that argument is undercut to a fair extent by the fact that *Hyer*, itself, has only been cited by other Fourth Circuit cases such as *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 (4th Cir. 1996) and *Doe v. Doe*, 973 F.2d 237, 239 (4th Cir. 1992). No North Carolina case has cited *Hyer*. Thus, there is no indication that *Hyer* has become the accepted or conventional understanding of North Carolina statutes of repose. Furthermore, the fact that the North Carolina legislature has not done any legislating in the wake of *Wilder* or *Hyer* (or *Klein*, for that matter) is of no moment to the court. Reliance on legislative

13

inaction is a slim reed upon which to place the weight of interpretation. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 175 n.1 (1989) ("It is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval of the Court's statutory interpretation.") (quotations and citations omitted).

Significantly, the North Carolina Supreme Court, itself, recognized in *Dunn v. Pacific Employers Insurance Co.*, 418 S.E.2d 645 (N.C. 1992), that § 1-52(16) applied to a "disease" case, unlike the statute in *Wilder*. This holding implicitly rejects the *Hyer* line of cases because *Dunn* did not require that "diseases" be expressly included in a statute of limitation or repose directed at personal injury claims in order for the statute to apply. *Id.* at 646-47.

Finally, although policy matters are irrelevant to an interpretation of the statutory language at issue here, both Plaintiffs and Defendant referred to such matters in their argument and the court should say something on that point. *See also Laura Jones*, Order, dated Nov. 9, 2010, at 7-8 ("[T]he Court cannot fathom a law that would require hundreds of thousands of plaintiffs to bring their claims before they even had opportunity to know they were harmed. . . . To summarily bar such claims from entering the court house would be a profound miscarriage of justice."). The court understands that the effect of a statute of repose in this case could eliminate a plaintiff's cause of action before that cause of action would accrue under the "discovery" rule as applied in North Carolina or for that matter

14

under CERCLA § 9658. This could be described as a harsh result. But it is also a logical and rationale result of a legislative compromise that gives to plaintiffs a "discovery" rule while providing defendants with an end point of liability. It is not the duty of the court to prevent what it might view as a "miscarriage of justice." The legislature is to make these determinations.

Furthermore, *Lamb v. Wedgewood South Corp.*, 302 S.E.2d 868 (N.C. 1983), cited by Plaintiffs, recognizes that the operation of the statute of repose may bar a claim before it actually exists thus creating a *damnum absque injuria* – a wrong for which the law affords no redress. *Id.* at 881 (citing cases from Pennsylvania, New Jersey, Louisiana, and Mississippi). The *Lamb* court specifically recognized that the legislature "has established a time period beyond which such claims may not be brought even if the injury giving rise to the claim does not occur until the time period has elapsed." *Id.* at 882.[5]

As a broad matter, this is a more beneficial result for plaintiffs generally than a three year statute of limitation with no discovery rule, which is essentially what applied in North Carolina prior to these amendments to limitations periods enacted in the 1970s. North

---

[5]The *Laura Jones* court similarly rejected a reading of the ten year statute of repose to include latent diseases because it found such an interpretation would be unconstitutional under North Carolina's "open courts" provision. It is true that North Carolina courts have posited that it would be possible for a statute of repose to be unconstitutional if it effectively abolished all potential claims. *See Lamb v. Wedgewood South Corp.*, 302 S.E.2d 868 (N.C. 1983). However, no North Carolina court has yet found that the ten year repose in § 1-52(16) is unconstitutional in this manner.

15

Carolina courts have upheld this compromise in cases challenging the statutes. *See*, *e.g.*, *Black v. Littlejohn*, 325 S.E.2d 469 (N.C. 1985) (noting that former § 1-15(b) was enacted to "mitigate the sometimes harsh results" of the three year statute of limitations which at that time did not provide a discovery rule, explaining purpose of enactment of statute of repose, and recognizing that "repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue"); *Raftery v. Wm. C. Vick Construction Co.*, 230 S.E.2d 405 (N.C. 1976) (also noting that enactment of discovery rule was to enlarge time within which action for damages could be brought, but repose period added to "prevent the statute from subjecting tort feasors to suit for alleged acts or defaults so far in the past that evidence as to the event would be difficult to secure and intervening causes would be likely, though difficult to prove").

For these reasons, the court concludes that North Carolina's statute of repose located in the last clause of § 1-52(16) does not contain an exception for latent diseases.

**Conclusion**

The court GRANTS the Government's motion for ruling on the preemptive effect of 42 U.S.C. § 9658 on the cases in which the Government asserted the statute of repose and on whether the North Carolina statute of repose for personal injury claims applies to latent diseases [23].

**IT IS SO ORDERED** this 11th day of May, 2012.

    S/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)