## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ERICA Y. BRYANT, Individually )
and as Executor of the Estate of )
Alonzo E. Bryant, Sr., Deceased, )
                               )     Civil Action No. 1:10-CV-02741-JOF
     Plaintiff, )
                                )
v.                              )
                                )
UNITED STATES OF AMERICA, )
                                )
     Defendant. )

### FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Erica Y. Bryant (hereinafter "Plaintiff"), individually, and as Executor of the Estate of her Deceased Husband Alonzo E. Bryant, Sr., and submits the following First Amended Complaint to add and/or clarify the following counts, to wit:

81.     Plaintiff restates and incorporates by reference, as if fully set forth herein, the entirety of her original Complaint.

82.     Plaintiff amends her Complaint of right, because Defendant has not filed an Answer.

83.     Plaintiff's claims set forth herein relate back to the date of filing of the Original Complaint and are timely filed.

84.     Each and every one of Plaintiff's claims are timely under Georgia law, North Carolina law, and Federal law, as according to the facts and law in this case, and where applicable, according to the facts and law upon application of 42 U.S.C.A. §9658.

## ~ NEGLIGENCE PER SE – BUMEDS ~

85.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1 through 84.

86.     Plaintiff timely files this negligence claim, pursuant to 28 U.S.C. §§ 1346, 2671 - 2680, *et. seq.;* O.C.G.A. § 51-1-1, *et. seq.*; and North Carolina common law.

87.     Moreover, pursuant to 42 U.S.C. § 9658, Plaintiff brings this State law claim against Defendant United States of America, for negligence per se resulting in personal injury and death.

88.     At all relevant times, Defendant owned, controlled, and/or operated the military based located at and known as Camp Lejeune.

89.     At all relevant times, BUMED Instruction 6240.3B and BUMED Instruction 6240.3C, attached as Exhibits A and B, and a Base Order, attached as Exhibit C, were in effect and required to be followed by Defendant at various Navy bases and facilities, including Camp Lejeune.

90.   The BUMEDs and Base Order, Exhibits A through C, created and mandated a duty on the part of the command staff, agents, servants and employees of Defendant at Camp Lejeune.  Such duty mandated, *inter alia*, that the Camp Lejeune water supply had to be adequate in capacity to meet maximum demands without creating health hazards; to be located, designed, and constructed to eliminate or prevent contamination or pollution; and to be conscientiously operated by well-trained and competent personnel whose qualifications were commensurate with the responsibilities of their positions.

91.   The BUMEDs and Base Order, Exhibits A through C, addressed the health and well-being of water consumers at Camp Lejeune, which included all those persons reasonably expected to be drinking and bathing in the water at Camp Lejeune, including Mr. Bryant.

92.   Such BUMEDs and Base Order, Exhibits A through C, establish a standard of care for Defendant's activities, in that:

a.   The purpose of the BUMEDs and Base Order wholly or in part, was to protect all water consumers and reasonably foreseeable water consumers at Camp Lejeune, a class of persons which includes Mr. Bryant.

b.    The purpose of the BUMEDs and Base Order, wholly or in part, was to protect physical health and well-being, the particular interest of Mr. Bryant's which was invaded.

c.    The purpose of the BUMEDs and Base Order, wholly or in part, was to protect against discomfort and disease, the particular kind of harm which Mr. Bryant suffered.

d.    The purpose of the BUMEDs and Base Order, wholly or in part, was to prevent contamination of the water supply at Camp Lejeune by hazardous materials and other pollutants, the particular hazard which has caused Mr. Bryant's harm.

93.    It is undisputed that contaminants were found in the drinking water at Camp Lejeune that were and are hazardous to human health.

94.    Defendant was negligent in violating the BUMEDs and Base Order, which contain standards intended for the health, safety, and welfare of all individuals for whom it was reasonably foreseeable that they would consume or become physically exposed to the water supply at Camp Lejeune.

95.    In addition to such violation, and without limitation, Defendant was negligent in violating additional military regulations, orders, procedures, and/or instructions, which contain standards to ensure the health, safety, and welfare of all

individuals for whom it was reasonably foreseeable that they would consume or become physically exposed to the water supply at Camp Lejeune.

96.     As a direct and proximate result of Defendant's violation of such standard of care, Mr. Bryant and the Plaintiff were injured and damaged.  Mr. Bryant sustained damages including disability, mental pain and anguish, psychological injury, loss of capacity for the enjoyment of life, loss of wages, loss of earning capacity, inconvenience, out of pocket expense, and death.  Plaintiff suffered, *inter alia*, loss of consortium damages, and severe emotional distress.

97.     Mr. Bryant and Plaintiff were damaged and injured as a direct and proximate result of the negligence of Defendant through its breach of its duties.

98.     Plaintiff is entitled to recover for Mr. Bryant's and her damages and injuries resulting from the negligence, in amounts to be determined at trial.

## ~ NEGLIGENCE PER SE – FEDERAL AND NORTH CAROLINA SAFE DRINKING WATER ACTS ~

99.     Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1through 98.

100.   Moreover, pursuant to 42 U.S.C. § 300j-8, Plaintiff brings this action against Defendant United States of America, for negligence per se resulting in personal injury.

101. 42 U.S.C. 300j-8 waives the United States' sovereign immunity to suit for violations of the Federal Safe Drinking Water Act.

102. At all relevant times, Defendant owned, controlled, and/or operated the military base located at and known as Camp Lejeune.

103. Defendant owned and/or operated the Camp Lejeune water supply system.

104. The Camp Lejeune water supply system is and was at all relevant times a public water system as defined at 42 U.S.C. 300f(4)(a).

105. At all relevant times, the Defendant was under a duty to abide by all monitoring, operational, safety, and notification requirements under 42 U.S.C. Ch. 6a, Subchapter XII and under North Carolina Drinking Water Act, N.C. Gen. Stat. §§ 130A-311 et seq.

106. From its enactment in 1974, the Federal Safe Drinking Water Act imposed duties and obligations on the Defendant to test the safety of the drinking water at Camp Lejeune, to ensure that the drinking water supplies were healthy, and to provide notice to those ingesting the water in the event that the drinking water supplies were discovered to contain contaminants.

107. In the 1996 amendments to the Federal Safe Drinking Water Act, Congress clarified that these requirements are specifically applied to all

departments, agencies, and instrumentalities of the executive, legislative, or judicial branch of the Federal Government that own or operate a public water system. 42 U.S.C. 300j-6; *See, e.g.,* EPA Guidance Memorandum 5/29/1998 explaining effect of 1996 amendments on Federal Facilities, attached hereto as Exhibit D.

108.   Pursuant to 42 U.S.C. 300g-1, the EPA has promulgated national drinking water regulations, at 40 C.F.R. 141, *et seq*., that establish maximum contaminant levels, monitoring requirements, and public notification requirements.

109.   The Federal Safe Drinking Water Act mandates that all owners or operators of public water supply system give notice of any failure of the water supply system to comply with applicable maximum contaminant levels to persons served by the system. 42 U.S.C. 300g-3(c)(1)(A)(i).

110.   Nonetheless, the Defendant intentionally or negligently failed to abide by these laws and breached its duty to abide by these laws with respect to Mr. Bryant and the Plaintiff.

111.   Defendant's failure to test, failure to provide water free from contaminants, and failure to provide notice to Mr. Bryant about the conditions of the water was negligence per se under federal and state laws and regulations.

112.   As a direct result of Defendant's failure to abide by the requirements of the Federal Safe Drinking Water Act and the North Carolina laws and regulations promulgated pursuant to the Act, Mr. Bryant was continuously exposed to the contaminants in the water during his time at Camp Lejeune.

113.   As a direct result of Defendant's failure to abide by the requirements of the Federal Safe Drinking Water Act and the North Carolina laws and regulations promulgated pursuant to the Act, Mr. Bryant was injured by his exposure to the contaminants in the Camp Lejeune drinking water.  These injuries caused and/or contributed to Mr. Bryant's death.

114.   Plaintiff is entitled to recover for the negligence per se that caused damage and injury to Mr. Bryant in amounts to be determined at trial.

## ~ NEGLIGENCE PER SE – DEFICIENT NOTICE UNDER 122 STAT. 56, SEC. 315 ~

115.   Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1 through 114.

116. Congress enacted the National Defense Authorization Act for Fiscal Year 2008 (hereinafter "Congressional Act") on January 28, 2008.  Pub. L. No. 110-181, 122 Stat. 3 (2008).

117.   This Congressional Act ordered Defendant, through the Secretary of the Navy, to provide notice of the Camp Lejeune drinking water contamination to

former residents of Camp Lejeune.  National Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 315, 122 Stat. 3, 56 (2008).  The relevant excerpt of this law, Section 315, entitled Notification of Certain Residents and Civilian Employees at Camp Lejeune, North Carolina, of Exposure to Drinking Water Contamination, is attached hereto as Exhibit E.

118.   Specifically, this Congressional Act required, among other things, that Defendant "notify directly individuals who were served by the Tarawa Terrace Water Distribution System…during the years 1958 through 1987 that they may have been exposed to drinking water contaminated with tetrachloroethylene (PCE)." *Id.*

119.   Pursuant to the Congressional Act, Defendant mailed a letter to the Plaintiff on September 1, 2008, via the Internal Revenue Service.  *See* "IRS Letter" attached hereto as Exhibit F.

120.   The IRS Letter, however, did not contain any reference to the fact that the contaminated drinking water at Camp Lejeune was served to residents of Tarawa Terrace, nor did it indicate that the drinking water provided to those residents was specifically contaminated with tetrachloroethylene (PCE).  Compare Notification Law, at Exhibit E and IRS Letter at Exhibit F.

121.   Rather, the IRS Letter intentionally or negligently indicates that the Defendant is not certain whether the recipient of the letter was even exposed to any substance, that the exposure may have been to "unregulated chemicals" that were not named, and that the impetus for sending the letter is that "the Marine Corps is funding health studies…."  *See* IRS Letter, Exhibit F.

122.  Defendant's IRS Letter mailed to the Plaintiff pursuant to Congressional Order was intentionally or negligently misleading, did not comply with the letter of the law, and was deficient under the letter of the law.

123.   The IRS Letter fails to provide adequate notice and warning, and is itself an active intentional or negligent concealment of Mr. Bryant's certain and prolonged exposure to the contaminated water and specifically to tetrachloroethylene; of the conditions of the drinking water at Camp Lejeune; and of the knowledge the Defendant possessed at the time about the human health hazards associated with exposure to the contaminants that were present in the drinking water at Camp Lejeune.

124.   The United States had a mandatory duty to provide notification to Mr. Bryant and the other Plaintiff as set out in the Congressional Act, but failed to comply with the law and failed and/or refused to perform that duty.

125.   The Defendant's provision of deficient and intentionally or negligently misleading information in the IRS Letter is negligence per se.

126.   Defendant's negligence per se caused and/or contributed to Plaintiff's injuries and damages, including but not limited to her severe emotional distress.

127.   Plaintiff is entitled to recover for the negligence per se that caused or contributed to Plaintiff's injuries and damages in amounts to be determined at trial.

### ~ LOSS OF CONSORTIUM UNDER GEORGIA LAW ~

128.   Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1 through 127.

129.   Plaintiff timely files this Loss of Consortium Claim pursuant to 28 U.S.C. 1346, 2671-2680, *et seq.*, O.C.G.A. 51-1-9; and 42 U.S.C.A. 9658.

130.   Defendant's negligence caused and/or contributed to Mr. Bryant's death and his pain and suffering prior to death.

131.   At the time of Mr. Bryant's death, Plaintiff was his lawful wife.

132.   As a direct result of Mr. Bryant's death due to the Defendant's acts and omissions, Plaintiff has been damaged and deprived of her right to the services of her spouse, his companionship, his conjugal affection, and each and every other spousal right and privilege recognized by law.

133.   Plaintiff is entitled to recover for her damages and for the loss of these services and affections in an amount to be determined at trial.

### ~ WRONGFUL DEATH AND LOSS OF CONSORTIUM UNDER NORTH CAROLINA LAW ~

134.   Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1 through 133.

135.   Plaintiff, in the alternative, brings this wrongful death claim pursuant to North Carolina's Wrongful Death Statute, Section 28A-18-2.

136.   Plaintiff was the legal wife of and is the personal representative or collector for Mr. Alonzo E. Bryant, Sr., the deceased, and is thereby entitled to bring this claim for wrongful death and loss of consortium.

137.   Defendant's negligence caused and/or contributed to Mr. Bryant's death and his pain and suffering prior to death.

138.   If Mr. Bryant had lived, he would have been entitled to an action for damages for his damages and injuries against the United States.

139.   The United States is liable to Plaintiff for all damages available for Mr. Bryant's wrongful death including, without limitation, for expenses for care, treatment and hospitalization incident to the injury resulting in death; compensation for pain and suffering of the decedent; the reasonable funeral expenses of the decedent; the present monetary value of the decedent to the

Plaintiff, who is entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected income of the decedent; the loss of services, protection, care and assistance of the decedent, whether voluntary or obligatory, to the Plaintiff; and the loss of society, companionship, comfort, guidance, and kindly offices and advice of the decedent to the Plaintiff.

## ~ NEGLIGENT BREACH OF DUTY TO WARN ~

140.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 139.

141.   Defendant had a duty under Federal Law, Georgia Law, and/or North Carolina Law to warn Mr. Bryant that he had been exposed to contaminated drinking water at Camp Lejeune.

142.   Defendant breached this duty by failing to provide any and/or adequate notice of the contamination of the water.

143.   Defendant breached its duties to warn Mr. Bryant about the contamination while he was stationed at Camp Lejeune.

144.   Defendant breached its duties to warn Mr. Bryant about the contamination after his honorable discharge from the military.

145.   Defendant breached its duties to warn Mr. Bryant about the contamination through its health care providers, who themselves should have been informed about the water contamination in order to provide proper and adequate medical care for service members and veterans, specifically including Mr. Bryant.

146.   Defendant breached its duties to warn Mr. Bryant about the contamination through its mailing of the intentionally or negligently misleading IRS Letter on or about September, 2008.

147.   Defendant continues to intentionally or negligently fail to provide adequate information to its health care providers and to Plaintiff about the water contamination.

148.   A new duty to warn arises each time Defendant obtains new, significant information about the types of hazardous contaminants that existed in the Camp Lejeune drinking water.

149.   A new duty to warn arises each time Defendant obtains new, significant information about the risks from the contamination to human health.

150.   A new duty to warn arises each time the Defendant obtains new, significant information about the concentrations of each hazardous contaminant that are sufficient to pose a risk to human health.

151.   A new duty to warn arose each time Mr. Bryant visited Defendant's health care providers.

152.   Defendant had a duty to keep its health care providers properly and adequately informed about known risks to the health of service members.

153.   Many such new duties have arisen before and after Mr. Bryant was honorably discharged from his military service.

154.   Nonetheless, the Defendant failed or refused to provide notice or warning to Mr. Bryant or Plaintiff pursuant to its increased knowledge about the drinking water contamination and the risks to human health.

155.   Defendant failed or refused to provide adequate, critical, and medically significant information to its own health care providers that would have served to protect the health of countless service members and veterans, including Mr. Bryant.  Such failure and refusal was a breach of the Defendant's duty to warn Mr. Bryant by and through its health care providers.

156.   Defendant's website and other publications negligently failed, and continue to fail, to provide adequate notice, warning, and information to Mr. Bryant, the Plaintiff, and the public at large.  *See* January 14, 2011, letter from the Department of Health and Human Services, attached hereto as Exhibit G, noting that the communication to the public from the United States Marine Corps in the

publication entitled *Camp Lejeune Historic Drinking Water: Questions and Answers*, does not:

> ... represent the role or position of ATSDR.  It understates the potential hazards from the contaminated drinking water and may discourage individuals from participating in planned research studies. We relayed to you some of our concerns on September 10, 2010.  This sentence remains particularly problematic… "To date, the scientific community has not established an association between exposure to the contaminated water and health conditions reported by former residents of Camp Lejeune."  The sentence is misleading.  ***It suggests there is no problem.*** (Emphasis supplied.)

157.   These said breaches by Defendant of its duties to warn caused and/or contributed to Mr. Bryant's injuries, pain and suffering, and his ultimate death due to his exposure to the contaminated water and his and his health care providers' ignorance of its impact on his health.

158.   Prior to his death, neither Plaintiff nor Mr. Bryant had any knowledge of the causal relationship between exposure to toxic drinking water at Camp Lejeune and his injuries and/or damages; such causal relation was not previously discovered due to the conduct of Defendant, acting by and through its agents, servants, and employees acting within the course and scope of their employment. Specifically, Defendant concealed, minimized, and failed to warn of or disclose such knowledge or otherwise relevant information within its exclusive possession and control regarding the potential harmful and dangerous effects of human

exposure to the chemicals found in the drinking water at Camp Lejeune.  To this day, Defendant continues to conceal and minimize its knowledge, and continues its failure and/or refusal to warn or disclose relevant knowledge.

159.   As a direct and proximate result of the negligence of Defendant through its breach of its duties owed to the decedent, Mr. Bryant was injured thereby, and sustained damages including disability, mental pain and anguish, psychological injury, loss of capacity for the enjoyment of life, loss of wages, loss of earning capacity, inconvenience, out of pocket expense, and death.

160.   As a direct and proximate result of the negligence of Defendant through its breach of its duties owed to Mr. Bryant, Plaintiff is entitled to recover for Mr. Bryant in an amount to be determined at trial.

## ~ NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS TO PLAINTIFF UNDER NORTH CAROLINA LAW ~

161.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 160.

162.   Plaintiff brings her claim for negligent infliction of emotional distress pursuant to North Carolina law.

163.   Defendant had a duty not to expose Mr. Bryant to industrial chemicals in its finished drinking water.

164. Defendant had a duty to tell Mr. Bryant and his estate, including Plaintiff, about his exposure to industrial chemicals in Defendant's finished drinking water.

165. Defendants' duties to warn Mr. Bryant about the contamination and the human health hazards associated with exposure to the hazardous substances arose from time to time upon the discovery of new information, as pled in greater detail herein.

166. Defendant repeatedly breached its duties, and repeatedly failed and refused to inform Mr. Bryant or Plaintiff about the toxic exposure, both prior to and after Mr. Bryant's honorable discharge from the service.

167. Defendant knew or should have known that Mr. Bryant's illness was associated with the contaminated water, where Mr. Bryant was treated for his symptoms and his illness by and through the Defendant's health care system, the Veteran's Administration.

168. Decades after Mr. Bryant was honorably discharged from the military, and after Mr. Bryant had in fact died from his illness, Defendant, under Congressional Order, provided Plaintiff with the IRS Letter that merely stated that "[u]nregulated chemicals were discovered in some of the base drinking water systems in the early 1980's."  See Exhibit F.

169.   Defendant's negligence did in fact cause personal injury to Mr. Bryant and to the Plaintiff, including without limitation, severe emotional distress.

170.   It was reasonably foreseeable that Defendant's conduct in failing to provide notice and warning to Mr. Bryant and in sending the IRS Letter to Plaintiff would cause Plaintiff severe emotional distress (also known as "mental anguish").

171.   Plaintiff did suffer from severe emotional distress upon receiving the IRS Letter, and upon her further discoveries that her deceased husband had been exposed to contaminated drinking water at Camp Lejeune, including but not limited to the discovery that Mr. Bryant's death was proximately caused by that exposure, that knowledge of the risk from the exposure could have caused Mr. Bryant to take preventive measures to save his life and/or to earlier detect his illness, and that such knowledge could have caused Plaintiff and Mr. Bryant to make different medical, financial, and other choices.   Plaintiff did suffer from severe emotional distress to learn that the United States military would so forsake her husband and her family, where Mr. Bryant so honorably served.

172.   Plaintiff is entitled to recover damages from Defendant for her severe emotional distress in an amount to be determined at trial.

## ~ DENIAL OF 5TH AMENDMENT RIGHT TO DUE PROCESS ~

173.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 172.

174.   The United States Constitution provides that no citizen shall be "deprived of life, liberty, or property, without due process of law…."  U.S. Const. Amend. V.

175.   Defendant disregarded its own BUMEDs and Base Orders and the Federal Safe Drinking Water Act, North Carolina Safe Drinking Water Act, and/or other nondiscretionary orders or duties that obligated it to provide safe drinking water to residents of Camp Lejeune, to test the drinking water to ensure its safety for human consumption, and to provide warning or notice to individuals who were exposed to the contaminated drinking water and/or their health care providers.

176.   The failure of Defendant to abide by the laws and orders directly resulted in a denial of Mr. Bryant's rights to due process.

177.   Defendant's acts and omissions in this regard are so egregious that they shock the conscience.

178.   Plaintiff is entitled to recover for Mr. Bryant's damages and injuries resulting from the denial of due process, in amounts to be determined at trial.

## ~ DENIAL OF 14TH AMENDMENT RIGHT TO EQUAL PROTECTION ~

179.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 178.

180.   The United States Constitution provides that the government shall not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.

181.   Nonetheless, Defendant failed or refused to provide Mr. Bryant with the protections from contaminated drinking water afforded to him under military, federal and state law.

182.   This failure and refusal was the proximate cause of Mr. Bryant's injuries and damages, and his ultimate death.

183.   Plaintiff is entitled to recover for Mr. Bryant's denial of equal protection under the law, in amounts to be determined at trial.

## ~ NEGLIGENT BREACH OF WARRANTY OF MERCHANTABILITY ~

184.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 183.

185.   The sale of drinking water constitutes the sale of goods under the Uniform Commercial Code (UCC).

186.   Under the U.C.C., a warranty of merchantability is implied in the provision of drinking water to residents at Camp Lejeune because under North Carolina law, Defendant was a merchant with respect to the drinking water it provided.

187.   The drinking water provided by Defendant did not comply with the warranty, and was defective due to the contamination of the water with TCE, PCE, VOCs, vinyl chloride, benzene, and/or other hazards substances.

188.   The drinking water contamination which occurred in this case was not visible to Mr. Bryant, nor otherwise open or obvious to him or to the Plaintiff.

189.   Defendant had knowledge -- and superior knowledge -- of the contamination, and neither Mr. Bryant nor the Plaintiff had the means or opportunity to discover the contamination or inspect the water for the hazardous contaminants before its use.

190.   The defective nature of this contaminated drinking water, and Defendant's failure to give Mr. Bryant notice of the contamination caused and/or contributed to Mr. Bryant's injuries and damages.

191.   Mr. Bryant became ill and ultimately died from renal cell cancer, caused by the contamination at Camp Lejeune.

192.   Plaintiff is entitled to recover for Mr. Bryant's injuries and damages from Defendant because of Defendant's breach of the warranty of merchantability in the drinking water it supplied.

## ~ NUISANCE ~

193.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 192.

194.   Mr. Bryant resided at Camp Lejeune in areas affected by Defendant's contaminated drinking water, ground water, and soils. Contaminants in the drinking water at Camp Lejeune and in the groundwater and soils on the base were piped to his residence property in the drinking water which Mr. Bryant used to drink, and for cooking, cleaning, bathing, and all other purposes.

195.   Defendant's acts and omissions that caused and continued to allow the contamination of its drinking water and the provision of such contaminated drinking water from its drinking water facilities into Mr. Bryant's home on the base interfered with Mr. Bryant's use and enjoyment of his residence property, thereby resulting in a private continuing nuisance for which the Defendant is responsible.

196.   Defendant caused injury and damages to Mr. Bryant as a direct result of this nuisance, for which Plaintiff may recover, through acts and omissions that

demonstrate wanton, reckless, and willful disregard for persons who might foreseeably be harmed by such acts or omissions, including Mr. Bryant.

197. As a result of the Defendant's actions towards Mr. Bryant, he suffered increased risk of serious latent disease, which did manifest itself, along with annoyance, inconvenience, and discomfort arising from the continuing nuisance created by Defendant.

198. Plaintiff is entitled to recover for the nuisance suffered by Mr. Bryant in amounts to be determined at trial.

## ~ TRESPASS ~

199. Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 198.

200. Hazardous contaminants were piped into Mr. Bryant's residence on base at Camp Lejeune, and were physically present in the drinking water that he used to drink and for cooking, cleaning, bathing, and all other purposes.

201. The Defendant's piping of hazardous contaminants into Mr. Bryant's residence resulted in a trespass to his abode, for which Defendant is responsible. This said trespass interfered with Mr. Bryant's right of possession of his residence property.

202.   Defendant knew, or should have known, that contaminants in its drinking water and from the disposal of hazardous substances on the base would migrate into and/or onto Mr. Bryant's abode and impact his person and property.

203.   The presence of the contaminants on and in Mr. Bryant's abode was unauthorized.

204.   Defendant did not seek nor obtain Mr. Bryant's consent to place their contaminants in or on his abode.

205.   Separate and apart from acting negligently or with gross negligence, at all relevant times the Defendant caused injury and damages to Mr. Bryant due to this trespass, for which Plaintiff may recover, through Defendant's acts and omissions demonstrating wanton, reckless, and willful disregard of persons who foreseeably might be harmed by such acts or omissions, including Mr. Bryant.

### ~ ATTORNEYS FEES, COSTS, AND EXPENSES ~

206.   Plaintiff restates and incorporates by reference as if fully set forth herein the above paragraphs 1 through 205.

207.   Plaintiff is entitled to recover her attorney fees and costs and expenses of litigation incurred, as provided by Georgia law under O.C.G.A. § 13-6-11 due

to the Defendant's putting Plaintiff to unnecessary trouble and expense, being stubbornly litigious, and acting in bad faith.

208.   Plaintiff is entitled to recover costs, including but not limited to her attorney fees and costs and expenses of litigation incurred, as provided by North Carolina law pursuant to N.C.G.S.A. § 6-20 and 7A-305(d) and/or as otherwise provided by North Carolina law.

209.   Plaintiff is entitled to recover fees, costs, and other expenses of litigation pursuant to federal law, including but not limited to 28 U.S.C. § 2412.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

[A]   Grant Plaintiff a trial upon her claims;

[B]   Enter Judgment in favor of Plaintiff and against Defendant on all claims in her Original and First Amended Complaints;

[C]   Order Defendant to pay damages to Plaintiff in amounts determined by the trier of fact;

[D]   Enter Judgment against Defendant and in favor of Plaintiff, awarding Plaintiff her reasonable attorney's fees, costs, and other expenses of litigation in amounts determined by the trier of fact; and

[E]   Grant Plaintiff such other relief as this Court deems just and proper.

Respectfully submitted this 31st day of May, 2012.

STACK & ASSOCIATES, P.C.

_____/s/ Jenny R. Culler_____
Donald D.J. Stack - Ga. Bar # 673735
Jenny R. Culler – Ga. Bar #200456
*Counsel for the Plaintiff*

260 Peachtree Street - Suite 1200
Atlanta, Georgia  30303
(404) 525-9205 Voice
(404) 522-0275 Fax
dstack@stack-envirolaw.com
jculler@stack-envirolaw.com

ROBERT B. JACKSON, IV, LLC

_____/s/_____
Robert B. Jackson, IV - Ga. Bar No. 387750
*Counsel for the Plaintiff*

260 Peachtree Street
Suite 2200
Atlanta, Georgia   30303
(404) 313-2039 Voice
(404) 420-2084 Fax
rbj4law@email.com

## <u>CERTIFICATION UNDER L.R. 7.1D</u>

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned counsel for Plaintiff hereby certifies that the above and foregoing pleading is a computer document prepared in Times New Roman (14 point) font in accordance with Local Rule 5.1B.

So certified this 31st day of May, 2012.

STACK & ASSOCIATES, P.C.

_____/s/_____
Jenny R. Culler, Ga. Bar No. 200456
*Counsel for the Plaintiff*

260 Peachtree Street - Suite 1200
Atlanta, Georgia  30303
(404) 525-9205 Voice
(404) 522-0275 Fax